MATTER OF RANSOM PARKER.                   121

Misc. 121]     Surrogate's Court, New York County, February, 1922.

In the Matter of the Estate of RANSOM PARKER, Deceased.

Surrogate's Court, New York County, February, 1922.

**Wills — codicil directing name of grandson to be stricken out of will and substituting executrices and trustees in his place — intent of testator only to substitute executrices and trustees and not to cut off grandson and his children — estoppel.**

Testator by a will which was long and involved made some provision for every one of his surviving children, grandchildren and great grandchildren as well as for some of his relatives-in-law. His wife died after the execution of the will but before the making of the codicil thereto which made many changes in the will. By the codicil he directed that the name " Ransom J. Parker," a grandson and one of the executors and trustees under the will, be stricken out and eliminated from his will and in the place and stead thereof there be substituted the names of two of testator's daughters whom he appointed executrices and trustees in place of said grandson, expressly granting unto said daughters as such executrices and trustees and to the other executor and trustee named in the will, full power to convey, lease or otherwise dispose of all his real estate either at public or private sale and to execute all necessary instruments in writing for such purposes. *Held*, that rightly read said clause of the codicil dealt only with the substitution of the two named sisters for the grandson as executrices and trustees, and that read as a part of the entire will and codicil and interpreted in the light of its language there was no escape from the conclusion that the testator did not intend by said clause of the codicil to cut off his grandson and great grandchildren from all share or provision in his estate.

The bequests in the will to said grandson and his issue being clear and unmistakable, could not be taken away by words of doubtful import and application in the codicil.

Under the will and codicil as construed the said grandson was entitled during his life to the entire net income of the trust created by a certain paragraph of the will and upon his death his issue are entitled to the remaining interest in said trust estate.

The adult parties in interest in this proceeding for the construction of the will and codicil are estopped from taking the position that the grandson has no interest in the estate by their failure to assert such claim during the several accounting proceedings in which the petition and accounts stated that he and his issue were interested in the estate.

PROCEEDING to construe a will.

*Jesse Grant Roe*, for petitioner.

*Clark Parker Lattin*, for C. P. Lattin.

*A. Bertram Samuels*, for Clifford E. Parker.

*Horace E. Parker*, for Falacie B. Parker.

*John Delahunty*, for respondent Ransom J. Parker.

*John J. Kirby*, special guardian for infants.

COHALAN, S. This is a proceeding to construe a will. The question is whether the eighth article of the codicil eliminated from the will the testator's grandson, Ransom J. Parker, and his issue,

Surrogate's Court, New York County, February, 1922.  [Vol. 118

wherever their names appeared, or whether the effect of said article was merely to substitute the testator's two sisters for Ransom J. Parker as executor and trustee. The article is as follows:

" *Eighthly.* I hereby direct that the name, ' Ransom J. Parker,' one of the Executors and Trustees named in my said last Will and Testament in sub-division marked ' Fifthly ' thereof, be stricken out and eliminated from my said last Will and Testament, and that in place and stead of the said name ' Ransom J. Parker ' there be substituted the names ' Mary Elizabeth Parker Place and Priscilla Townsend Parker Starin,' whom I hereby appoint in the place and stead of said Ransom J. Parker, as Executors and Trustees of my said last Will and Testament, hereby expressly granting unto these said Executors and Trustees, namely Mary Elizabeth Parker Place and Priscilla Townsend Parker Starin, and to my other said Executor and Trustee named in my said last Will and Testament, full power and authority to grant, convey, sell at either public or private sale, lease or otherwise dispose of any and all real estate of which I may die possessed, and to that end and purpose I hereby grant unto my said Executors and Trustees full power and authority, and expressly authorize them to make, execute and deliver any and all deeds of conveyance, leases or other instruments in writing which may be necessary."

It is apparent that the above clause, standing alone, may be read both ways. But, read as a part of the entire will and codicil, and interpreted in the light of all of its language and provisions, there seems to be no escape, in my opinion, from the conclusion that the testator did not intend to cut off his grandson and great grandchildren from all share or provision in his estate. Extrinsic evidence has been taken, but I have considered only that which bears on the ground of estoppel. It is only in case of ambiguity, unexplained by any other part of the will, that such evidence is receivable in the interpretation of a will. When the entire testamentary disposition of the testator is considered, his intent in the article in question appears to be sufficiently plain. The testator made some provision in the will for every one of his surviving children, grandchildren, great grandchildren, as well as for some of his relatives in law. The relatives are as follows:

Mary E. P. Place, a daughter; Priscilla T. P. Starin, a daughter; Ransom J. Parker and Mabel Parker, children of Joseph Parker, a son of testator who died before the execution of said will and codicil;

Falacie B. Parker, Clifford E. Parker, Lillian V. Parker, Anna E. Lyon, Sarah J. Wagner, Elly Z. Parker, Martin Van Buren Parker, Grace P. Schmidt and Marguerite Parker, children of Ransom

Misc. 121]     Surrogate's Court, New York County, February, 1922.

Parker, Jr., a son of testator who died before the execution of said will and codicil;

Charles H. Silkman, son of Marie Parker Silkman, a daughter of testator who died before the execution of said will and codicil;

Testator's wife, Jane Parker, died after the execution of the will but before the execution of the codicil.

The will and codicil are long and involved. The codicil made many changes in the will. A feature of the codicil is the manner in which the modifications were made. The testator or the draftsman adopted a precise and exact manner of making changes. The method adopted was that of striking out specific words, sentences and whole paragraphs and of adding whatever other provisions he wished to incorporate in the will and codicil. If the testator intended to eliminate Ransom J. Parker and his issue, the eighth article of the codicil is the only portion of the entire codicil which shows an utter absence of the meticulous exactness of statement and description that characterizes all the other portions.

This is sufficient answer to the contention that the eighth article of the codicil did more than revoke the appointment of Ransom J. Parker as executor and trustee and substitute therefor the names of testator's two daughters. The bequests in the will to Ransom J. Parker and his issue are clear and unmistakable. There is no doubt whatever about their meaning or effect. Bequests or devises given in such precise language in the will could not be taken away by words of doubtful import and application in the codicil. *Goodwin v. Coddington,* 154 N. Y. 283.

By the very first article of the codicil testator has given us a guide to the interpretation of the disputed eighth article. In the first article he elimated from the will his grandson, Leicester W. Parker (who had died since its execution), and his issue. Bearing in mind that it is contended that the testator intended to eliminate Ransom J. Parker and his issue from all participation in the will and codicil, the manner of making such a modification as to Leicester W. Parker and his issue is, naturally, of the greatest importance.

The first article is as follows:

" *First.* Whereas, Leicester W. Parker, mentioned in my last Will and Testament, has died since the execution of my said last Will and Testament, Now I, the said Ransom Parker, do hereby direct and it is my will that the said name ' Leicester W. Parker ' be stricken out of said will wherever the said name ' Leicester W. Parker ' occurs in ·paragraph marked ' First ' of subdivision marked ' Fourthly ' of my said last Will and Testament, and in lines twelve, nineteen and twenty-two on page 5 of said last Will and Testament

in paragraph marked ' And Fifthly ' of said subdivision marked ' Fourthly ' of said last Will and Testament, and that the words ' and the issue of Leicester W. Parker, said issue to take *per stirpes* and not *per capita* ' in lines eight, nine and ten on page 6 of my said last Will and Testament of paragraph marked 'And Fifthly ' of said subdivision marked ' Fourthly ' of my said last Will and Testament be also eliminated and struck out from my said last will and testament."

A comparison of the above language with that of the eighth article of the codicil is significant. Ransom J. Parker and his issue were receiving more under the will than Leicester W. Parker and his issue. It is not reasonable to suppose that the draftsman or testator would take so much care to eliminate Leicester W. Parker and his issue and show an absence of all precision in cutting off Ransom J. Parker and his issue. It is not reasonable to suppose that a separate article would be required to eliminate Leicester and his issue, while the far more important elimination of Ransom J. Parker and his issue would be included with the provisions of the clause appointing substitute executors and trustees in a paragraph that seems to refer chiefly to such appointment. The clause in question does not mention the *issue* of Ransom J. Parker. The only part of the will referred to in the eighth article of the codicil is " subdivision marked ' fifthly,' " which relates only to the appointment of executors and trustees and the powers granted them.

In the change as to Leicester W. Parker appears the statement " that the name ' Leicester W. Parker ' be stricken out of said will wherever the said name ' Leicester W. Parker ' occurs." Then follows a description of each article, subdivision and even the page and lines where said name is to be stricken out. The elimination from the will of the issue of Leicester is provided for in the same precise manner by designating the paragraph, subdivision, page and lines of the will where the bequest to the issue was made.

The same method of striking out specific paragraphs or certain provisions, identified by paragraph, subdivision, page and even lines and the substitution or addition of other provisions was followed in the case of every other change made by the codicil, except the one in which it is claimed that Ransom J. Parker and his issue were cut off. Testator followed this system in the changes made in the legacies to Margaret G. Parker, Charles P. Silkman, Lillian V. Parker, Alfred F. Stone and the four relatives, each of whom was made beneficiary of an $8,000 trust fund in the codicil instead of the $400 annuity under the will. It is not to be supposed that the testator or draftsman was careful and precise in making

MATTER OF RANSOM PARKER. 125

Misc. 121]    Surrogate's Court, New York County, February, 1922.

every change except the one in question. There was more reason for the testator to be careful, definite and clear with the change at issue here because Ransom J. Parker and his issue received more under the will than any of the others above mentioned.

Article sixth of the codicil furnishes a very strong indication that the testator had no intention of disturbing or modifying the portion of the will that bequeaths a substantial portion of the residuary to Ransom J. Parker and his issue. In fact, this article of the codicil expressly confirms said gift to the issue of Ransom J. Parker. After substituting the $8,000 trust funds for the life benefit of four of his grandchildren, he directed that the principal of these trusts, after the death of each grandchild, " be paid over to the respective persons and in the manner and in the same proportions provided in paragraph marked ' and Fifthly ' in subdivision marked ' Fourthly ' of my said last Will and Testament, in lines 2 to 10, page 6, of my said last Will and Testament." The provision of the will just referred to, and thus made part of the codicil is as follows: " To Mary Elizabeth Parker Place a one-fourth ($\frac{1}{4}$) part thereof; to Priscilla Townsend Parker Starin a one-fourth ($\frac{1}{4}$) part thereof; to * * * Mabel Parker and the issue of Ransom J. Parker, said issue to take *per stirpes* and not *per capita*, equally a one-fourth ($\frac{1}{4}$) part thereof; to Clifford E. Parker, Falacie B. Parker and Marguerite Parker, equally a one-fourth part thereof." The failure of the testator to state that the provision of the will in favor of the issue of Ransom J. Parker had been modified in the codicil cannot be called an oversight or be inadvertent, because in this article sixth of the codicil he said: " I hereby give, devise and bequeath unto my three executors and trustees of my said last will and testament, mentioned in my said will, *as hereinafter modified in this my said codicil*, the following respective sums * * *."

As pointed out in the briefs of counsel, the substitution of the names of the two sisters of testator for Ransom J. Parker wherever his name appears in the will leads to some absurd consequences that never could have been intended by the testator or draftsman. Another peculiarity of the will and codicil is that the objects of testator's bounty are identified by pedigree descriptions. In every modification made by the codicil, except the one in controversy, the person affected is referred to by such a pedigree description. The fact that when Ransom J. Parker is referred to in the eighth article there is a departure from this custom is an indication that he was not being referred to in connection with his interest as legatee, but merely in the capacity of executor and trustee. The only part of the will referred to in article eighth of the codicil is

Surrogate's Court, New York County, February, 1922.    [Vol. 118

subdivision marked " Fifthly," which relates solely to the appointment and powers of the executors and trustees. The portions of the will which gave to Ransom J. Parker and his issue their interest in the estate were subdivisions "And Fourthly " and " And Fifthly " of article " Fourthly." The codicil specifically modified these subdivisions of the will with reference to Leicester W. Parker and his issue, but made no such specific mention of any of said subdivisions in referring to Ransom J. Parker. " Ninthly " of the codicil changes the numbering of " And Fifthly " of the will. This is the last dispositive paragraph of the codicil and shows that at the very last the testator or draftsman had this important paragraph in mind and yet made no specific reference to Ransom J. Parker, or to any change affecting his interest under the will.

It seems plain, therefore, that the testator did not intend to cut off his grandson and his issue by the wording of article " eighthly " of the codicil. Rightly read that paragraph dealt only with the substitution of the two sisters for Ransom J. Parker as executor and trustee.

This has been the theory under which all parties under this will have been acting for the past sixteen years. The sisters who would have gained most by the elimination of Ransom J. Parker acquiesced in such an interpretation. The practical construction given this will by all the parties for such a long period would seem to operate as an estoppel. Dunlap v. Gill, 23 Misc. Rep. 418. Another rule frequently applied is that an heir is not to be disinherited or excluded by words of doubtful implication. If Ransom J. Parker be held to be excluded from any participation in the estate he will be the only heir at law of the decedent disinherited. I do not think the language of article eighth of the codicil is sufficiently clear to accomplish this purpose.

I am also inclined to think the adults who now take the position that Ransom J. Parker has no interest in the estate are estopped by their failure to assert such claims during the several accounting proceedings in which the petitions and accounts stated that Ransom J. Parker and his issue were interested in the estate. In any one of these accountings this question could have been adjudicated upon an objection by any of these parties who now raise the question. They stood by, made no objection to such statements in the petitions and accounts, or to the appointment of special guardians for the issue of Ransom J. Parker, or to allowances to such guardians out of the principal of the estate. Necessarily included in the decrees passing the accounts were adjudications that those cited, for whom guardians were appointed and compensation directed, were interested in the estate. It would now

seem too late to raise the question.    Those who do so have been guilty of unreasonable laches.    *Calhoun* v. *Millard*, 121 N. Y. 69, 81.

The will is construed in accordance with the foregoing views. I hold that Ransom J. Parker is entitled during his life to the entire net income of the trust created by paragraph originally designated "And Fifthly" of subdivision "Fourthly" of the will, and that his issue are entitled upon his death to the interest in the remainder of said trust estate given them by the provisions of said paragraph.

Decreed accordingly.